HENRY HALE, Respondent, *v.* THE BROOKLYN LIFE INSURANCE COMPANY, Appellant.

*Agent of a life insurance company — when ' he is entitled to receive a commission on premiums received by the company on the renewal of policies issued by him, while in its employ.*

On or about the 13th day of February, 1880, a contract was made between the defendant and the plaintiff for the continuation of the plaintiff's services as its agent, by which it agreed to pay him a monthly salary at the rate of $2,000 per annum, to give him "regular renewal commissions on the policies obtained by (him) you when the premiums shall have been paid to the company," and, also, to give him a bonus of seventy-five dollars in each quarter, if thirty-five policies, averaging $1,000 or more each, were placed by him, provided that the issue should only be reckoned for the quarters commencing, respectively, on the first day of May, or August, or November or February, and, also, an additional bonus of $100, if, in the twelve months commencing February 1, 1880, he should have accepted and issued for the company 150 policies as above; and that if the gross insurance on such policies should amount to $225,000 an additional $100 would be given. The plaintiff had been employed by the defendant, and had issued policies for it in the years 1878 and 1879, some of which were renewed in 1880. The plaintiff continued in the employment of the defendant under this contract until December 31, 1880, when the contract was terminated by the agreement or consent of the parties.

Upon the trial of this action, brought to recover commissions upon premiums received by the defendants in the years 1881, 1882, 1883 and 1884, upon the renewals of policies issued by the plaintiff after February 13, 1880, and before December thirty-first of that year, the referee held that he was entitled to recover them.

*Held,* that the judgment should be affirmed. (Daniels, J., dissenting.)

*Edwards* v. *Chapman* (1 Mees. & W., 231) followed, and *Shaw* v. *Home Life Insurance Company* (49 N. Y., 681) distinguished.

Appeal from a judgment in favor of the plaintiff, entered on the report of a referee.

*William H. Ford,* for the appellant.

*Hamilton Wallis,* for the respondent.

Bartlett, J.:

This action is brought to recover renewal commissions on policies of fire insurance obtained by the plaintiff as agent of the defendant. On the 13th day of February, 1880, the president of the Brooklyn

Fire Insurance Company made a proposition, in writing, to the plaintiff, who was then in the defendant's service, that he should continue in the employment of the company as agent upon certain terms as to salary and compensation therein specified. One of the terms of the offer was in the following words.: " The company agree likewise to give you regular renewal commissions on the policies obtained by you when the premiums shall have been paid to the company." The plaintiff accepted the proposition, and his employment, under the contract thus made, continued until about the 31st day of December, 1880, when, as the referee has found, at the request of the defendant, the contract terminated by the agreement or consent of the parties.

No question arises here as to any portion of the contract, except that which has already been quoted relating to renewal commissions. A renewal commission, according to the uncontradicted testimony of the president of the defendant corporation, is the commission on premiums paid on a policy subsequent to the first year's payments. If a man pays $100 a year premium, the second $100 and all subsequent payments are called renewals, and the commissions on such payments are renewal commissions. It is obvious that such commissions can never become due until the second year of the life of a policy.

The plaintiff sues for renewal commissions on premiums paid to the defendant upon policies obtained by him before February 13, 1880, and also during the existence of the contract of that date. The defendant contended on the trial that the phrase " policies obtained by you," in that part of the agreement concerning renewal commissions, meant only such policies as the plaintiff had procured to be issued prior to the execution of the contract; but the referee correctly rejected this construction, and held that the commissions were plainly to be paid upon policies obtained, as he says, under the contract, that is to say, between February 13 and December 31, 1880. That they were payable upon policies taken out through the agency of the plaintiff prior to the execution of the contract, appears to have been assumed without question by both parties, for renewal commissions on such earlier policies seem to have been paid to the plaintiff by the defendant during 1880, while the contract was in full force and effect, and the defendant has insisted throughout the case, and now insists, that the contract contemplated no other or later policies whatsoever.

During the existence of the contract the plaintiff's right to commissions on premiums received by the company, after the premium for the first year had been fully paid, became fixed as soon as the plaintiff caused a policy to be taken out. The subsequent abrogation of the contract of employment by mutual consent did not deprive him of this right. So far as the contract remained executory the agreement to terminate it destroyed it as to both parties, but to this extent it had been executed by the plaintiff, and the mutual abandonment of the contract did not take away his right to the renewal commissions already earned any more than the expiration of the contract by the efflux of time would have done, at the end of a year from the date of the agreement. In an action for goods sold and delivered, the plea that the sale and delivery were made under a contract which has subsequently been wholly annulled and rescinded by both parties constitutes no defense. (*Edwards* v. *Chapman,* 1 Mees. & W., 231.) So far as the policies are concerned upon which the plaintiff claims renewal premiums, the insurance company has derived all the benefit which was intended under the contract, and the agreement to rescind does not bar the agent from recovering his just compensation.

In the case of *Shaw* v. *Home Life Insurance Company* (49 N. Y., 681) cited by the appellant, the contract differed materially from that under consideration here, as appears from an examination of the record itself. (Court of Appeals Cases, 1872.) There the agreement provided for the payment of commissions after the termination of the contract, only in the event that the agent himself should continue thereafter to perform the services necessary to procure the payment of the renewed premiums. In other words, the right to commissions on renewal premiums was made expressly dependant on the rendition of future services; and as the plaintiff voluntarily surrendered the right to perform these, it was held that he could not recover. There is no such element, however, in the case at bar. As to the charge that the plaintiff failed to perform his duties under the contract, the testimony is conflicting, but the referee's conclusion in the plaintiff's favor is amply sustained by the proof.

The judgment should be affirmed with costs.

VAN BRUNT, P. J., concurred.

DANIELS, J. (dissenting):

On or about the 13th of February, 1880, a contract was made between the defendant and the plaintiff for the continuation of his services as agent in its employment. The contract was made by correspondence, consisting of the following letter written to him by the president of the company:

"NEW YORK, *February* 13, 1880.

Mr. HENRY HALE:

"DEAR SIR: We herewith agree to continue your services as agent in this company on the following terms:

"1. The company will pay you a monthly salary at the rate of two thousand dollars per annum.

"2. The company agree likewise to give you regular renewal commissions on the policies obtained by you when the premiums shall have been paid to the company.

"3. The company further agrees to give you a bonus of seventy-five dollars in each quarter when you shall place thirty-five policies, averaging one thousand dollars or more each, upon different individuals, to be accepted by the company, provided such issue shall only be reckoned by the quarters commencing respectively on the first day of May or August, or November or February.

"4. If in the twelve months commencing the first day of February, 1880, you shall have accepted and issued for this company one hundred and fifty policies as above, the company will give you one hundred dollars additional bonus, and if the gross insurance on such policies shall amount to two hundred and twenty-five thousand dollars, the company will give you another additional one hundred dollars.

"It is understood and agreed that in accepting this agreement, you pledge yourself to use your best efforts for the interest of the company and for its progress in the getting of new business and otherwise, under the rules of the company as communicated to you by the officers, from time to time; further, that your time and efforts belong exclusively to the company, and are to be given industriously, intelligently and faithfully to the prosecution of their business, under the direction of the president and the secretary.

"Very truly yours,

"W. M. COLE, *President.*"

Which was accepted in writing by the plaintiff. This contract, although it was not so stated in the letter, was clearly intended to extend over the period of one year. For the stipulation contained in the third subdivision to pay the plaintiff a bonus of seventy-five dollars in each quarter on the first of May, August, November or February when he should place thirty-five policies with the company averaging a thousand dollars each, and the further stipulation contained in the fourth subdivision of the contract to pay him a further bonus for policies obtained in the twelve months commencing the 1st day of February, 1880, evince that to have been the intention and design of the parties. It was a contract for the year ensuing the date of making it, which was the 13th of February, 1880. This contract was not fully performed by the plaintiff, but it was terminated by the consent and agreement of the parties, on the 31st of December, 1880. Previous to that time the plaintiff applied for a renewal or extension of his contract from its expiration on the 13th of February, 1881, but that was not conceded or agreed to. But no refusal to enter into another contract for the performance of further services was made on behalf of the defendant, but the plaintiff entered into an agreement before the 31st of December, 1880, with the Equitable Life Insurance Company to act as the agent of that company. And on or about that day he gave notice to the defendant that he had made such an agreement, and about the sixth of January thereafter he entered the service of that company. Before the making of this last agreement the defendant had no information of the plaintiff's intention to enter into the service of the other company. But when the defendant's officers were apprised of the fact that a contract had been made between the plaintiff and that company, they consented to the termination of the plaintiff's agreement with the defendant on the 31st of December, 1880, and after that he performed no services for the defendant.

He had been in a similar capacity in the service of the defendant in the years 1878 and 1879 and had obtained policies of insurance on the lives of different individuals during those years, and from the 13th of February, 1880, to the last of December of the same year he was paid commissions on the renewal premiums of such policies. In this action the claim made by him was for commissions on still further renewal premiums, including those paid upon policies or risks obtained

by him for the defendant while he was employed by it under the contract of February, 1880, and after he had left its service, and the referee, construing the agreement to entitle him to such commissions, allowed them to him upon the premiums received by the defendant during the years 1881, 1882, 1883 and 1884. These commissions he was considered to be entitled to recover under the second subdivision of the contract. But it is evident from the letter forming the agreement that all that was intended to be paid to the plaintiff while it continued in force, was to be for the yearly services performed under it. There was no agreement inserted in the letter to make payment to him for such services after the contract itself should termmnate, but the stipulations for the compensation mentioned in the contract were limited to the one year appearing to be within the contemplation of the parties. The salary which he was restricted to was for that period, and so were the bonuses to be paid to him for the thirty-five quarterly policies and the one hundred and fifty yearly policies. And it can hardly be supposed from the language contained in the second subdivision of the letter that any different period from that was within the intention of the parties; during which renewal commissions were payable to the plaintiff. In construing the contract the court is entitled to place itself in the situation of the parties at the time when it was made. They had before them the fact that the plaintiff had obtained policies or risks for the defendant while he was in its service in 1878 and 1879, upon which renewal premiums would be payable during the year 1880. No renewal premiums would be payable on policies issued in that year, and consequently no commissions for renewal premiums during that year could be received by the plaintiff. The parties consequently must have had in their minds when the agreement was made the policies which had been issued previous to the 13th of February, 1880, and had been obtained by the plaintiff, and it was on those policies that he was to receive his regular renewal commissions. The language of this subdivision of the letter is adapted to the expression of that intention, but not of the intention to create an obligation to pay the plaintiff renewal commissions on all policies obtained by him, after he should leave the service of the defendant, and during all the time such policies should continue to run. That would be an entirely unreasonable construction to be placed upon

this language.  It is not to be supposed that the defendant would obligate itself to pay such commissions for an indefinite series of years, as it might under the construction adopted by the referee, or that the plaintiff at the time when this agreement was made expected that such commissions should be received by him for the services that he might perform for the company between the 13th of February, 1880, and the 13th of February, 1881.

This result also follows from the circumstance that the agreement itself was terminated by the consent of both parties on the 31st of December, 1880.  It was not the effect of the action of the parties that it should be terminated in part, or that the obligation mentioned in subdivision 2 of the letter should be reserved and continued. If it had been, some intimation or stipulation to that effect would have been made at the time, but no reservation whatever of any future liability under this contract to the plaintiff was made, but it was completely and wholly terminated by the consent and action of the parties.  And that termination deprived it of all future and prospective force as an agreement.  It was substantially a rescission of so much of the agreement as remained unperformed, consisting of one month and thirteen days' service, to be rendered by the plaintiff, and a corresponding obligation on the part of the defendant to pay him for such service.  And it is the nature of such a rescission that the contract affected by it as to the future relations of the parties, shall be entirely terminated.  (*Fullager* v. *Reville*, 3 Hun, 600; *Shaw* v. *Home Life Insurance Co.*, 49 N. Y., 681.)

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.